**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| DAVID TOM,<br><br>Plaintiff,<br><br>v.<br><br>TRANSPORTATION MEDIA, INC., dba BENCH CRAFT CO.,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:22-cv-01296-RP |

## DEFENDANT'S MOTION TO DISMISS

This case arises from a single alleged call to a Florida-registered cellular phone owned by a Florida resident, Plaintiff David Tom ("Tom"). The call was allegedly placed by an Oregon company, Defendant Transportation Media, Inc. ("Bench Craft"), for the purpose of promoting advertising services for Tom's Florida businesses, to be placed on various physical objects at a Florida golf course a few miles from Tom's home. Unbeknownst to Bench Craft, Tom happened to be traveling through Texas on his way to California at the time the call was placed. On that thin reed alone Tom hangs both this Court's personal jurisdiction and multiple alleged violations of Texas law.

Tom already filed one case in Florida state court based on the same operative facts, asserting the same federal claim under the Telephone Consumer Protection Act ("TCPA"). The Florida court dismissed Tom's first complaint in that case in June 2022. Tom refiled, and a motion to dismiss has been pending on his revised complaint since July 2022.[1] Deciding he could perhaps

[1] A copy of the operative complaint in that case is attached as Exhibit A (the "FL Complaint").

improve his odds by way of multiplicative litigation in an additional forum, Tom filed this case in December 2022.

As is readily apparent from the facts Tom alleges, this Court lacks personal jurisdiction over Bench Craft. The sole Texas contact Tom asserts was a single phone call Bench Craft did not intentionally direct to Texas. Instead, Bench Craft allegedly dialed the Florida number of a Florida company with the intention of promoting physical advertising at a Florida golf course. Even with the greatest creativity and good will, it would be hard to imagine a weaker and less purposeful contact with Texas. Fortunately, the Court need only note that the vagaries of a plaintiff's private travel plans are not dispositive of due process issues, and Tom's transitory presence in the Austin airport is inadequate to support personal jurisdiction.

The absence of personal jurisdiction is sufficient to dismiss this case under Federal Rule of Civil Procedure 12(b)(2), and the Court need look no farther. But Tom also fails to state a claim on which relief could be granted—even if his rather threadbare allegations are taken as fact—and the Complaint should be dismissed with prejudice under Rule 12(b)(6). The TCPA claim fails because there is no regulatory requirement to provide anyone who asks with a written do-not-call policy, much less a private right of action to enforce it, and because Tom does not allege the cell phone he listed on his business contact information was used for "residential purposes." The Texas state law claims fail because Tom neither sought nor acquired services from Bench Craft and because Tom does not—and cannot—allege detrimental reliance, causation, and actual damages.

Bench Craft thus respectfully requests that the Court dismiss the Complaint for lack of personal jurisdiction or, in the alternative, for failure to state a claim on which relief could be granted.

**BACKGROUND**

Bench Craft provides business-to-business advertising services for small- to medium-sized local businesses. Bench Craft assists golf courses, such as Barefoot Bay, in creating various products such as score cards, benches, and tee signs in exchange for the right to sell advertising on those products. Bench Craft then markets the advertising space, along with its services in creating appropriate advertisements, to business located within ten or twenty miles of the golf course. This case arises out of Bench Craft's attempt to do just that for a Florida resident who operates at least two businesses with addresses near a Florida golf course. Bench Craft had no knowledge its actions would touch on Texas, even as superficially as Tom alleges here.

Tom alleges but a single connection between Bench Craft and Texas: While waiting to board a flight from Austin to Los Angeles, he claims he received one call from Bench Craft on his cellular phone "offering golf course advertising" that would be physically located at the Barefoot Bay Recreation District in Sebastian, Florida ("Barefoot Bay"). Compl., at ¶¶ 10, 11, 25. Tom is a resident of nearby Palm Bay, Florida. Compl., at Summons Page; FL Compl., at ¶ 11. Tom omits any information about his phone number, despite its materiality in a TCPA case.[2] But, in his Florida suit, he alleges any calls from Bench Craft "were initiated to a Brevard County, Florida Telephone number."[3] FL Compl., at ¶ 9. The records Tom attached confirm his phone number

[2] This omission appears strategic, given that the number in question uses a Florida area code and is listed as Tom's contact number on his various business websites.

[3] Because Tom's Florida complaint is a publicly available document, and there is no dispute over the facts that Tom is a Florida resident and that his phone number has a Florida prefix, the Court may take judicial notice without converting this Motion to one for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting court ruling on 12(b)(6) motion may consider "matters of which a court may take judicial notice"); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *accord Funk v. Stryker Corp.*, 631 F.3d 777, 782-83 (5th Cir. 2011).

used the 321 area code (Florida) and that the alleged call from Bench Craft originated from the 503 area code (Oregon). *Id.* at Ex. C.

Tom does not allege any other contacts with Texas, nor does he allege that he had a Texas phone number, that he had informed Bench Craft he was—or ever would be—in Texas, or provide any other reason Bench Craft could possibly have believed its actions would implicate Texas in any way. Similarly, he has not alleged Bench Craft solicited anyone other than Florida residents—and certainly not Texas residents—regarding physical advertising opportunities at a golf course located in Central Florida.

The additional facts Tom alleges have nothing to do with Texas. He describes a series of attempted communications that took place between himself in Florida, Bench Craft in Oregon, and counsel for Bench Craft in both Florida and Oregon. Compl., at ¶¶ 12, 14-16, 18-20, 22. Tom alleges other solicitation contacts from Bench Craft, but does not allege he received any of those communications in Texas or that any came by telephone. *Id.* at ¶¶ 17-18.

Tom advances three claims. First, he asserts a violation of the federal Telephone Consumer Protection Act of 1991. ("TCPA"). Compl., at ¶¶ 29-33. Although the Complaint only provides details of a single phone call, Tom alleges four distinct violations. *Id.* ¶ 33. Second, Tom alleges a single violation of Texas Business and Commerce Code Section 302.101, which requires registration with the state under certain circumstances. *Id.*, ¶¶ 34-42. Finally, Tom claims a single violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), codified at Business and Organizations Code Section 17.46. *Id.*, ¶¶ 43-46.

On December 13, 2021, Tom filed a lawsuit in state court in Brevard County, Florida, claiming the same violations by Bench Craft under TCPA and Florida law based on the same conduct he alleges in this suit. *See generally*, FL Compl. That complaint was dismissed on June

16, 2022, and Tom subsequently filed an amended complaint. A motion to dismiss that complaint has been pending since July 2022. Tom then filed this suit on December 9, 2022.

## ARGUMENT

### I. A FLORIDA RESIDENT'S SERENDIPITOUS RECEIPT OF ONE CELL PHONE CALL PROMOTING PHYSICAL ADVERTISING SERVICES IN FLORIDA WHILE HE WAS TRAVELING THROUGH TEXAS FAILS TO ESTABLISH PERSONAL JURISDICTION.

Before proceeding, Tom must prove the Court may exercise personal jurisdiction by showing Bench Craft "purposefully established minimum contacts" in Texas. *Asahi Metal Ind. Co. v Super. Ct.*, 480 U.S. 102, 108-09 (1987); *accord Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Under Rule 12(b)(2), "[w]hen personal jurisdiction is challenged, the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" *Quick Techs., Inc., v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (citation omitted). Where, as here, specific jurisdiction is at issue, a Court must consider three questions:[4]

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth*, 472 F.3d at 271. While the Complaint arguably pleads causes of action that arise, at least in part, from the single phone call Tom allegedly received in Texas, it fails to show either minimum contacts or that exercise of jurisdiction would be fair and reasonable.

[4] The Complaint does not suggest Texas has general jurisdiction over Bench Craft. Nor could it, since Tom admits Bench Craft is incorporated in Oregon and has its headquarters there. Compl., at ¶ 5. *See also, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").

### A. Tom Has Not Alleged Minimum Contacts with Texas.

To establish minimum contacts for jurisdictional purposes, a defendant must engage in "'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Personal jurisdiction does not obtain where a defendant's contact with the forum state was "random, isolated, or fortuitous." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984). "Random, isolated, and fortuitous" is, however, the only way to describe Bench Craft's alleged contact with Texas in this case.

Despite having at least alleged personal jurisdiction in his Florida complaint, FL Compl., at ¶ 9, Tom makes no allegations regarding this Court's personal jurisdiction over Bench Craft.[5] *See* Compl., at ¶¶ 1-5. The Complaint asserts only that Tom allegedly received a single solicitation call on his cellular phone while he happened to be traveling through Texas. Compl., at ¶¶ 10-11. Tom's phone is registered to a Florida-based number, not one from Texas, and the alleged call originated from Oregon. FL Compl., at ¶ 9 & Ex. C. Tom gives no reason to believe Bench Craft knew he was in Texas at the time of the call—or indeed that Bench Craft knew Tom ever had or ever would visit Texas. In fact, even Tom's Florida lawsuit did not allege any contact with Texas, despite relying on the same November 2021 phone call. *See generally*, FL Compl. Bench Craft thus could not know it had allegedly reached Tom while he was in Texas—or that it ever might be "haled into court" there—until Tom filed the Complaint in this case. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[5] As far as Bench Craft can ascertain, Tom is not a licensed attorney. He does, however, work with attorneys and purportedly provides continuing legal education instruction. *See* https://www.legallyaccurate.com/our-team. Tom's omission of any personal jurisdiction allegations from this case is telling in light of his demonstrated awareness of that requirement.

Other facts Tom alleges further belie the notion that Bench Craft knowingly reached out to Texas, much less purposefully availed itself of "the privilege of conducting activities" involving Tom in Texas. *Burger King*, 471 U.S. at 474-75. By its own terms, the Complaint notes the alleged solicitations were for "golf course advertising, graphic design, and advertising on golf course furniture and scorecards" at Barefoot Bay Recreation District in Florida. Compl., at ¶¶ 11, 25; FL Compl., at ¶ 11. Even construing the Complaint generously, there is no reason to believe Bench Craft knowingly solicited individuals located in Texas for small-scale physical advertising at a golf course in Florida. Instead, the only rational inference is that Bench Craft allegedly solicited Tom—operator of at least two Florida businesses—for advertising at a golf course located a few miles from his home because it believed he was located in Florida. That Tom happened to be waiting for a flight out of Texas at the time the alleged call occurred was wholly fortuitous.

Courts faced with similar facts—an attempt to solicit local business in one state that inadvertently touched residents in another state—have had little trouble in finding no personal jurisdiction even where the phone numbers used *aligned* with the state in which the calls were received—unlike here. In *Sojka v. Loyalty Media LLC*, the court addressed a situation where a Colorado company called an Illinois resident with an Illinois cell phone number located in Illinois. No. 14-CV-770, 2015 WL 2444506, at *3 (N.D. Ill. May 20, 2015). Because the Colorado company solicited business for its Boulder, Colorado, location based on the plaintiff's prior patronage of that location and did not seek to solicit any business in Illinois, the court held it lacked personal jurisdiction. *Id.* at *3. Similarly, the court in *Frank v. Gold's Gym of North Augusta, S.C.*, held it had no personal jurisdiction where a South Carolina gym solicited Minnesota residents with Minnesota cell phone numbers, noting that the solicitation sought to "provide[] an inherently local service" and therefore did not evince an intentional contact with Minnesota. No. CV 18-

447(DSD/KMM), 2018 WL 3158822, at *3 (D. Minn. Jun. 28, 2018). And, in *Cantu v. Platinum Mktg. Grp., LLC*, the court held it lacked personal jurisdiction where the sole allegations supporting minimum contacts were that the plaintiff was a resident of Texas and received calls—in alleged violation of TCPA—on a cell phone with a Texas area code even where the caller sought to do business in Texas. No. 1:14-CV-71, 2015 WL 13912331, at *3-4 (S.D. Tex. Jul. 13, 2015).

As the Supreme Court has held, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Nothing meaningfully connects Bench Craft to Texas in this case. The sole contact came from an alleged call received by a Florida resident on a Florida number while the recipient was traveling through Texas—a fact unknown to Bench Craft. The alleged solicitation was for purely local business in Florida, not for business touching Texas in any way. The Court thus lacks personal jurisdiction.[6]

### B. Exercise of Personal Jurisdiction Would Not Comport with "Fair Play and Substantial Justice."

Even if any meaningful contacts existed, the facts Tom alleges in the Complaint demonstrate exercise of jurisdiction would be unfair and unreasonable. The Fifth Circuit requires courts to consider five factors in determining whether personal jurisdiction would be fair and reasonable: "'(1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of

[6] The Supreme Court's recent decision in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), is not to the contrary. Unlike that case, the product Bench Craft offered here—physical advertising at a golf course in Florida that, like the real property on which it resides, is uniquely local—was never offered to any resident of Texas. Nor was there any realistic likelihood such products would travel to Texas, unlike the automobiles in *Ford Motor*, and no possibility they would cause any injury in Texas.

controversies, and (5) the shared interests of the states in furthering fundamental social policies.'" *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018). Those factors militate strongly against exercising jurisdiction here.

Bench Craft is an Oregon company, and defending itself in Texas carries the substantial costs attendant with being sued in an unfamiliar forum far from any relevant witnesses. On the other side of the scales, Texas's interest in this case can charitably be described as de minimis. Adjudicating every dispute involving (1) a non-resident who just happened to communicate with (2) another non-resident while the latter was passing through Texas where (3) no actual injury was allegedly inflicted—in Texas or elsewhere—would not benefit Texas in any way. Tom, for his part, can obtain effective relief elsewhere with no greater effort than he must put in to bring suit in Texas, a thousand miles from his home. Meanwhile, this is Tom's second suit filed over the same operative facts making the same core claims; continuing with parallel litigation is hardly efficient from the interstate judiciary's perspective. Finally, no interests in "furthering fundamental social policies" depend on this Court exercising jurisdiction. Thus, even if sufficient contacts existed to establish personal jurisdiction in this case, which they do not, the Court should still dismiss the Complaint because exercising jurisdiction would be unfair and unreasonable.

## II. TOM FAILS TO STATE A CLAIM UNDER TCPA OR UNDER TEXAS STATUTES.

"[C]laims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law'" or "if the complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To meet this standard, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *Id.* at 899 (quoting

*United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' 'Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Id.* at 899-900 (internal citations omitted) (alteration in original); *accord Iqbal*, 556 U.S. at 678 (holding presumption that complaint's allegations are true does not apply to "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

### A. No Private Right of Action Exists Under TCPA for Failure to Provide a "Do Not Call Policy."

The sole violation Tom claims under TCPA stems from Bench Craft's alleged refusal to provide what Tom describes as a "Do Not Call Policy" purportedly required by 47 C.F.R. § 64.1200(d)(1). Compl., at ¶¶ 16, 31-33. Tom claims he is entitled to damages under 47 U.S.C. § 227(c)(5) for each of the four times he allegedly demanded Bench Craft provided him such a policy. *Id.* at ¶ 33. There is no private right of action based on failure to provide a telephone subscriber with a written policy for maintaining an internal do-not-call list, however.[7] "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017).

In its entirety, Section 227(c)(5) provides:

> A person who has **received more than one telephone call within any 12-month period** by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions. **It shall be an affirmative defense in any action brought under this**

[7] 47 C.F.R. § 64.1200(d) does require telemarketing companies to put in place written procedures for creating and updating their own do-not-call lists. Neither the FCC's regulations nor TCPA provides for any enforcement action—public or private—based on a failure to do so, however. *See* 47 C.F.R. § 1.80(a)(4) (providing for enforcement of restrictions on robocalls and misleading caller identification only).

> **paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection.** If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(c)(5) (West 2022) (emphasis added). By its plain language, this provision does not allow a private right of action based on failure to provide, on demand, the written procedures for a defendant's do-not-call list.[8] Nor does the implementing regulation create a right of action—either private or public—for enforcing the requirement that telephone advertisers maintain such a list.[9] *See generally*, 47 C.F.R. § 64.1200(d) (West 2022). In fact, the written procedure requirement fleshes out the affirmative defense to the cause of action specified in Section 227(c)(5), providing details for how telephone advertisers may demonstrate they "implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5).

While the violation on which Tom hangs his TCPA claim—an alleged failure to provide him with a copy of Bench Craft's do-not-call list procedures—has no private right of action and is otherwise unsupported by law, the Complaint is also fatally deficient with respect to the right of action that actually exists under Section 227(c)(5). Tom alleges details regarding a single call he allegedly received in November 2021; the plain text of the statute requires at least two calls in a twelve-month period. Compl., at ¶¶ 10-11. He claims he "continued to be contacted" by Bench

---

[8] Tom's attempt to define each alleged request he made for a written policy as a separate violation subject to a separate fine is even more fanciful. This conception of TCPA as an ATM disbursing $500 for each email demand sent is without any statutory or case support.

[9] Violation of the requirement may serve as a predicate for the element of Section 227(c)(5) that requires a call made in violation of regulations, but is not an independent basis for recovery as Tom claims.

Craft, but the sole example he gives is an email allegedly sent in September 2022.[10] *Id.* at ¶¶ 17-18. Nor does he allege any call made in violation of a specific regulation. He thus fails to allege he received more than one call within a twelve-month period or that such calls were in violation of applicable regulations, as required to state a claim under Section 227(c)(5). A TCPA plaintiff must plead details of the alleged calls; repleading with generic allegations would be insufficient under *Iqbal*. *See Laccinole v. Rocket Mortg., LLC*, No. CV 21-478-JJM-LDA, 2022 WL 2355430, at *3 (D.R.I. Jun. 30, 2022) (dismissing TCPA claim where plaintiff pleaded "mere recitations of the legal elements").

Tom's TCPA claim fails as a matter of law for an additional reason—Section 64.1200(d) applies by its terms only to residential phone lines. 47 C.F.R. § 64.1200(d)(1) (prohibiting certain telemarketing calls made to "a residential telephone subscriber"). District courts in Texas have held that this does not reach cellular phones unless the plaintiff can show such a phone is used for residential purposes. *See, e.g.*, *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020) (holding that TCPA requires proof a cellular phone was used for "residential purposes" before a call to it can be a potential violation of Section 227(c)(5)); *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *5-6 (W.D. Tex. May 10, 2021) (dismissing claim for alleged violation of 47 C.F.R. § 64.1200(d)); *see also Johnson v. Palmer Admin. Servs., Inc.*, No. 622CV00121JCBKNM, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, No. 6:22-CV-00121, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022)

[10] Tom's generic and conclusory allegations about other calls he hypothesizes Bench Craft has made are wholly lacking in any details and fall squarely in the realm of "speculative" facts that cannot support a claim under *Iqbal* and its progeny. Compl., at ¶¶ 7-9.

(same). Tom does not allege the cell phone on which he purportedly received the call from Bench Craft was one used for residential purposes.[11]

Tom's TCPA claim should be dismissed both because he alleges a violation—failure to provide him with a copy of a "do-not-call policy"—that is neither a violation of Section 227(c)(5) nor supported by a private right of action and because he has not pleaded facts demonstrating the cellular phone in question was residential in nature.[12]

**B. Tom Fails to State a Claim for Violation of the Texas Telemarketer Registration Requirement.**

Both state law claims also fail on the merits because Tom does not—and cannot—plead detrimental reliance or consumer status when he did not seek or acquire services from Bench Craft and refused to even hear Bench Craft's promotion of its services. Tom claims Bench Craft's single phone call to his Florida number violated the registration requirement set forth in Texas Business and Commerce Code Section 302.101. "A seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101 (West 2022); *see also* Compl., at ¶¶ 34-41. Tom asserts he is entitled to a $5000 civil penalty as a result. Setting aside the due process implications of requiring an Oregon company to register in Texas on the off chance a Florida resident with a Florida phone number

---

[11] In fact, the line Bench Craft allegedly called is the one Tom lists in his contact information on the websites of his various businesses.

[12] If the Court dismisses Tom's sole federal claim (TCPA), it should decline to exercise supplemental jurisdiction over Tom's state law claims. State law issues would predominate, one of which (registration) is virtually undeveloped by state courts. Comity counsels in favor of state adjudication, and there would be no loss of judicial efficiency at this stage of litigation. *See D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 207 (5th Cir. 2018) (listing factors for declining supplemental jurisdiction); *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446 (5th Cir. 2002) (same).

happens to be passing through Texas when called about advertising services in Florida, this claim must be dismissed for two reasons.

First, there is no private right of action to enforce the civil penalty provision on which Tom relies. Tex. Bus. & Com. Code § 302.302(a) (West 2022) ("A person who violates this chapter is subject to a civil penalty of not more than $5,000 for each violation."). The Texas Supreme Court has held that, where a statute provides for a civil penalty, "the Legislature may grant private standing to bring such actions, but it must do so clearly." *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004) (finding no private right of action to enforce daily penalty for failure to transfer title to property after receiving payment because statute was silent about who could collect the penalty). Nothing in the language of Section 302.302 contemplates enforcement by a private party, and Texas law prohibits Tom's attempt to read such a right into statutory silence.

Second, Tom must show detrimental reliance to invoke the private right of action the Texas Legislature *did* create to enforce the registration requirement. His Complaint does not plead detrimental reliance—and, in fact, makes clear he took no action in reliance on anything Bench Craft allegedly said or did. Unlike the civil penalty provision, Section 302.303(b) does expressly create a private right to enforce the registration requirement, but only as provided under the Deceptive Trade Practices and Consumer Protection chapter of the Business and Commerce Code. Tex. Bus. & Com. Code § 302.303(b) (West 2022) (referring to Subchapter E of Chapter 17). Even if he repleaded, Tom would have to bring his claim under Section 17.50, which provides the private right of action for consumers based on deceptive trade practices.[13] Tex. Bus. & Com. Code

[13] The remedy provision for the registration requirement expressly ties the two: "A violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17. Tex. Bus. & Com. Code § 302.303(a) (West 2022). Tom's registration claim is thus only actionable as another theory for his DTPA claim and fails for the same reasons—Tom was not a consumer,

§ 17.50(a)(1)(B) (West 2022). For claims based on deceptive acts or practices, Section 17.50 requires proof the offending practice was "relied on by a consumer to the consumer's detriment." *Id.* Tom clearly did not purchase any services or take any other detrimental action in reliance on any conduct or statements by Bench Craft; his only reaction was to threaten Bench Craft with legal action for making the call. Compl., at ¶¶ 10-12. The Complaint thus fails to state a claim based on the Texas telemarketing registration statute.

### C. Tom Does Not State a Claim Under the Texas Deceptive Trade Practices-Consumer Protection Act.

Tom's final claim is that Bench Craft's actions somehow violated the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). Compl., at ¶¶ 43-46. The sole factual allegation supporting this claim is that Bench Craft "deceptively represents that they are calling on behalf of or have sponsorship, authority, or approval to sell advertising space, with an ambiguous affiliation or connection to a golfing facility." [14] *Id.*, at ¶ 46.

"A claim under the DTPA has three elements: '(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages.'" *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 768 (5th Cir. 2016) (quoting *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995)). Tom fails to allege the first and third elements—a failing he cannot possibly remedy by merely reframing his pleadings.

---

did not detrimentally rely on any alleged act or representation of Bench Craft, and suffered no damages as a result of Bench Craft's phone call.

[14] In his Florida complaint, where he has joined Barefoot Bay as a co-defendant, Tom has alleged precisely the opposite—that Bench Craft and Barefoot Bay have exactly the sort of relationship he denies in his Complaint in this case, under penalty of sanctions. *See* FL Compl., at ¶ 10; Fed. R. Civ. P. 11(c).

Tom has not alleged he is a consumer, as required for standing under DTPA. A consumer is "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code § 17.45(4) (West 2022). "To qualify as a consumer, the plaintiff 'must have sought or acquired goods or services by purchase or lease,' and those 'goods or services . . . must form the basis of the complaint.'" *Villarreal*, 814 F.3d at 768. But Tom makes clear the exact opposite was true—he neither sought nor purchased any goods or services from Bench Craft and, instead, desired not to be contacted at all. Compl., at ¶¶ 10-12, 17. Nor do any services offered by Bench Craft form the basis of his Complaint, which focuses solely on one alleged phone call.

Moreover, as with his registration claim, Tom does not—and cannot—allege any supposedly deceptive acts by Bench Craft caused him to suffer damages. Tom does not allege he took any action in reliance on representations made by Bench Craft, nor does he show any services Bench craft offered to provide caused him to suffer actual damages. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012) (holding under DTPA that "a consumer loses without proof that he relied to his detriment on the deceptive act"); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002) (holding "reliance is an element of . . . DTPA 'laundry list violations'"); *Villarreal*, 814 F.3d at 768 (requiring proof deceptive act caused plaintiff's damages). Tom does not—and cannot—allege he took any detrimental action based on any purported act or representation of Bench Craft, nor does he allege either causation or damages. Tom has therefore failed to state a claim under DTPA.

## CONCLUSION

Courts in Texas lack personal jurisdiction over an Oregon company that contacted a Florida resident over a business proposal for local advertising in Florida. Even if the Court had jurisdiction,

however, Tom has failed to plead any claim on which relief could be granted. Bench Craft therefore respectfully requests that the Court dismiss the Complaint.

Dated: December 29, 2022

Respectfully Submitted,

/s/ *Jennifer Rappoport*
Jennifer Rappoport
State Bar No. 24072761
jennifer@wittliffcutter.com

**WITTLIFF | CUTTER PLLC**
1209 Nueces Street
Austin, Texas 78701
T: (512) 960-4162
F: (512) 960-4869

**ATTORNEYS FOR DEFENDANT TRANSPORTATION MEDIA INC., DBA BENCH CRAFT COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of December, 2022, a true and correct copy of the foregoing document was served on Plaintiff via United States certified mail, return receipt requested, at the following address, as provided on the summons sheet in this matter:

David Tom
1058 Herne Avenue
Palm Bay, Florida 32907

/s/ *Jennifer Rappoport*
Jennifer Rappoport